**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| v. | : | 1:25-cr-323 |
| | : | |
| **JEFRY STEVENT PADILLA SANCHEZ**: | | Judge Chutkan |
| | : | |
| **Defendant.** | : | |

## GOVERNMENT'S SENTENCING MEMORANDUM

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this memorandum in aid of sentencing. For the reasons set forth below, the Government recommends that the Court impose a sentence of 25 months' imprisonment, within the advisory Guidelines range of 21 to 27 months' imprisonment, followed by a term of supervised release, a mandatory special assessment, and forfeiture.

**I.     PROCEDURAL BACKGROUND**

On September 17, 2025, the defendant, Jefry Stevent Padilla Sanchez, was charged by criminal complaint with Unlawful Possession of a Firearm and Ammunition by a Felon, in violation of 18 U.S.C. § 922(g)(1). The charge arose from the defendant's arrest on September 12, 2025, at the Fort Totten Metro Station in Washington, D.C., where he was found in possession of a loaded firearm while subject to multiple outstanding warrants and active felony probation in the State of Maryland.

On September 30, 2025, the defendant and the government entered into a written plea agreement with the United States. Pursuant to that agreement, the defendant pleaded guilty to Count One of the Information, charging him with a violation of 18 U.S.C. § 922(g)(1), which was supported by a Statement of Offense.

II.     **FACTUAL BACKGROUND**

On September 12, 2025, at approximately 6:38 p.m., Metro Transit Police Department officers observed the defendant commit fare evasion at the Fort Totten Metro Station by "piggybacking" behind a paying customer. *See* Presentence Investigation Report ("PSR") ¶ 10. When officers stopped the defendant to issue a civil citation, he initially provided false identifying information. *Id.* A subsequent records check revealed that the defendant had an active extraditable warrant issued by the Circuit Court for Montgomery County, Maryland, for violation of probation stemming from a felony burglary conviction. *See* PSR ¶¶ 10, 31.

Officers placed the defendant under arrest and conducted a search incident to arrest. That search revealed a 9mm Heckler & Koch P2000SK semiautomatic handgun concealed in the defendant's waistband. *See* PSR ¶ 11. The firearm was loaded with nine rounds in the magazine and one round in the chamber, rendering it immediately operable and ready to fire. *Id.* The firearm was later test-fired and confirmed to be functional.

In addition to the firearm, officers recovered approximately 37 counterfeit "M30" pills, which laboratory testing confirmed contained fentanyl. *See* PSR ¶ 11. According to the Gerstein affidavit referenced in the PSR, the quantity recovered was more consistent with possession with intent to distribute than personal use. *Id.* The defendant also admitted to officers that he had ingested fentanyl earlier that day and requested hospital transport for withdrawal symptoms. At the time of this offense, the defendant had multiple prior felony convictions punishable by more than one year of imprisonment, including Second-Degree Burglary and Unauthorized Removal of a Motor Vehicle, both imposed in 2023 by Maryland courts. *See* PSR ¶¶ 12, 30–31. He was serving concurrent terms of supervised probation for those offenses. *Id.* Rather than comply with

2

supervision, the defendant ceased reporting to his probation officer, failed to provide proof of employment or education, incurred new arrests, and failed to appear for court proceedings, resulting in multiple active bench warrants at the time of the instant offense. *See* PSR ¶¶ 30–31, 34.

The defendant's possession of a loaded, chambered firearm in a crowded public transit station, while unlawfully possessing fentanyl and while actively evading court supervision, posed an acute and unacceptable risk to public safety.

### III.   SENTENCING GUIDELINES

The Presentence Investigation Report ("PSR") calculates the defendant's advisory Sentencing Guidelines as a base offense level of 14 under U.S.S.G. § 2K2.1(a)(6)(A), based on the defendant's status as a prohibited person at the time of the offense. PSR ¶ 18. The PSR applies a four-level enhancement under U.S.S.G. § 2K2.1(b)(7)(B), finding that the defendant possessed the firearm "in connection with another felony offense," namely possession with intent to distribute fentanyl. PSR ¶ 19. After applying a three-level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1(a)–(b), the PSR calculates a total offense level of 15. PSR ¶¶ 25–27.

The PSR assigns the defendant a criminal history score of three, resulting in a Criminal History Category II. PSR ¶¶ 32–34. Based on a total offense level of 15 and Criminal History Category II, the PSR calculates an advisory Guidelines range of 21 to 27 months of imprisonment. The defendant does not object to the PSR's Guidelines calculation. The Government submits that the PSR's calculation is accurate and that a sentence within the advisory range appropriately reflects the seriousness of the offense, the defendant's repeated failures on supervision, and the need to protect the public and deter future criminal conduct.

**IV. SENTENCING FACTORS UNDER 18 U.S.C. § 3553(a)**

A sentence within the advisory Guidelines range is necessary and appropriate to satisfy the purposes of sentencing set forth in 18 U.S.C. § 3553(a).

**A. Nature and Circumstances of the Offense**

The defendant carried a loaded, chambered 9mm semiautomatic handgun, concealed in his waistband, as he moved through the Fort Totten Metro Station during evening hours. The firearm contained nine rounds in the magazine and one round in the chamber, making it immediately operable and ready to fire. *See* PSR ¶ 11. Courts in this District have repeatedly recognized that unlawful possession of a loaded firearm by a convicted felon presents a grave danger to the community, even absent brandishing or discharge. That danger is heightened when, as here, the firearm is carried in a crowded public-transit environment.

The seriousness of the offense was further compounded by the defendant's possession of approximately 37 fentanyl-positive "M30" pills, a quantity that the arresting officer concluded was more consistent with distribution than personal use. *See* PSR ¶ 11. The defendant also admitted to ingesting fentanyl earlier that day. *See* PSR ¶ 11. The combination of a loaded, chambered firearm, narcotics possession, and possible intoxication in a busy Metro station created an acute risk to innocent members of the public and to the officers who encountered him.

The defendant's conduct occurred while he was subject to active felony probation in two separate Maryland cases, with outstanding bench warrants issued after he stopped reporting to probation, incurred new arrests, and failed to appear for required court proceedings. *See* PSR

4

¶¶ 30–31. His decision to carry a loaded firearm and fentanyl while absconding from supervision underscores both the seriousness of the offense and his disregard for court-ordered conditions.

### B. History and Characteristics of the Offender

The defendant's history reflects a clear pattern of escalating criminal conduct and persistent noncompliance with court-ordered supervision. Despite receiving suspended sentences, probationary terms, and multiple opportunities for rehabilitation, the defendant repeatedly violated the conditions imposed upon him. In his two Maryland felony cases, the defendant was placed on supervised probation, stopped reporting, incurred new arrests, and failed to appear for required court proceedings, resulting in active bench warrants in both cases at the time of the instant offense. *See* PSR ¶¶ 30–31.

The instant offense occurred while the defendant was a fugitive from two separate felony probation cases, with warrants issued on July 31 and August 22, 2025, respectively. *See* PSR ¶¶ 30–31. His decision to carry a loaded, chambered firearm and fentanyl while actively evading supervision underscores that prior leniency and community-based sanctions have failed to deter him. His conduct demonstrates a disregard for the law and for the authority of the courts that weighs heavily in favor of a substantial custodial sentence.

The defendant's criminal history also shows a troubling pattern of escalation. Soon after reaching the age of majority, he accumulated convictions for unauthorized removal of a motor vehicle and second-degree burglary. *See* PSR ¶¶ 30–31. He continued to engage in criminal conduct while on probation, including arrests for disorderly conduct, threats to do bodily harm, and controlled-substance offenses, several of which resulted in failures to appear and additional warrants. *See* PSR ¶¶ 35–40. This pattern of behavior, occurring in rapid succession and without

5

any meaningful period of law-abiding conduct, is particularly concerning given the defendant's relatively young age.

Despite these repeated violations, the defendant has yet to face significant custodial consequences for his conduct. His prior sentences were largely suspended, and his probationary terms were marked by noncompliance rather than rehabilitation. The defendant's history demonstrates that community-based supervision has been ineffective and that he has not taken advantage of the opportunities previously afforded to him. Absent the Court's intervention through a meaningful term of imprisonment, one could reasonably expect a continuation (and likely an escalation) of his criminal conduct.

### C. The Need for the Sentence Imposed to Reflect the Seriousness of the Offense and Promote Respect for the Law

A meaningful term of imprisonment is necessary to reflect the seriousness of the defendant's conduct and to promote respect for the law. The defendant's offense occurred when the defendant had two active felony probation terms. As detailed in the PSR, the defendant stopped reporting to probation, failed to appear for scheduled court hearings, incurred new arrests, forcing the court to issue bench warrants. *See* PSR ¶¶ 30–31. A sentence that does not meaningfully account for this pattern would risk signaling that compliance with court-ordered supervision is not mandatory.

The defendant's conduct also reflects clear acceleration in criminal behavior. Within a span of roughly two years, he progressed from property crimes and vehicle theft to a series of commercial burglaries involving multiple businesses, and then to armed conduct while in possession of fentanyl. *See* PSR ¶¶ 30–31. This trajectory demonstrates not only recidivism, but

escalation. The Court should consider that progression when determining a sentence that promotes respect for the law and provides just punishment.

The seriousness of the offense is further underscored by the defendant's simultaneous possession of fentanyl, a substance responsible for a significant portion of overdose deaths in this District. In 2023, just through October, there were 427 opioid related overdose deaths in Washington D.C.[1] The PSR notes that the quantity recovered (approximately 37 "M30" pills) was assessed by the arresting officer as more consistent with distribution than personal use. *See* PSR ¶ 11. The combination of a loaded firearm and dealer quantities of fentanyl in a public-transit environment magnifies the danger posed by the defendant's conduct and warrants a sentence that reflects the gravity of that risk.

The defendant has been given multiple opportunities to comply with court-ordered conditions, including suspended sentences, probationary terms, and participation in supervision programs. Yet each opportunity was met with noncompliance, new criminal conduct, or flight from supervision. *See* PSR ¶¶ 30–31, 35–40. These failures demonstrate that lesser sanctions have not been effective in deterring the defendant from reoffending. A custodial sentence is necessary to impress upon him that continued disregard for the law will result in serious consequences, particularly when it involves firearms and controlled substances.

Finally, a 25 month sentence is necessary to protect the public. The defendant's conduct shows that when he is not in custody, he engages in criminal activity across jurisdictions, ignores court directives, and carries weapons and narcotics in public spaces. *See* PSR ¶¶ 10–13, 30–31.

---

[1] See https://ocme.dc.gov/sites/default/files/dc/sites/ocme/agency_content/Opioid%20related%20Overdoses%20Deaths_Jan%202024.pdf

7

His history provides no basis to conclude that community-based supervision would mitigate the risk he poses. A term of imprisonment is therefore required to incapacitate the defendant for a period sufficient to reduce that risk and to provide a structured environment that has not been achieved through prior supervision.

A custodial sentence of sufficient length would also permit the defendant to participate in the Bureau of Prisons' Residential Drug Abuse Program ("RDAP"), an intensive treatment program designed for individuals with documented substance-abuse histories. The PSR reflects that the defendant possessed fentanyl at the time of the offense and admitted to recent ingestion, underscoring the role substance abuse has played in his criminal conduct. A sentence that allows the defendant to be considered for RDAP would serve the dual purposes of accountability and rehabilitation by addressing the substance-abuse issues that have contributed to his repeated violations of the law. In this respect, a meaningful term of imprisonment would not only protect the public and promote respect for the law, but would also provide the defendant with access to structured treatment that has not been achieved through prior supervision alone.

## V. CONCLUSION

A sentence within the advisory Guidelines range is necessary to reflect the seriousness of the offense, promote respect for the law, and protect the public. The defendant's conduct was dangerous, deliberate, and emblematic of a sustained refusal to comply with court-ordered conditions. Prior leniency and community-based supervision have failed to deter him, and his criminal conduct has escalated rather than abated. A custodial sentence of 25 months' imprisonment is therefore required to hold the defendant accountable, to deter future violations, and to safeguard the public.

    Respectively,

    JEANINE FERRIS PIRRO
    UNITED STATES ATTORNEY


    By:  */s/  Christopher Tortorice*
    Christopher Tortorice
    Assistant United States Attorney
    Texas Bar No. 24048912
    National Security Section
    601 D Street, N.W.,
    Washington, D.C. 20530
    (202) 252-7155
    christopher.tortorice@usdoj.gov